**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

FALL LINE PATENTS, LLC,

      Plaintiff,

       v.

UBER TECHNOLOGIES, INC.,

      Defendant.

CIVIL ACTION NO. 6:17-CV-408

**JURY TRIAL DEMANDED**

**FALL LINE PATENTS' OPPOSITION TO UBER TECHNOLOGIES'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

I.     Introduction ........................................................................................................ 1

II.    The 748 Patent .................................................................................................. 1

III.   A Motion to Dismiss is Not a Proper Vehicle For Defendant's Section 101 Defense ....... 3

IV.   The Claims are Valid Under Section 101 ......................................................... 3

       A.     Claims Are Invalid Under Section 101 Only if Directed To an Abstract Idea and if They Lack an Inventive Concept .......................................................... 3

       B.     The Claims Are Not Directed to an Abstract Idea .................................... 4

               1.     The 748 Patent Provides a Technological Solution to Problems Found in the Prior Art ................................................................... 5

               2.     Federal Circuit Precedent Demonstrates That the 748 Patent is Not Abstract ....................................................................................... 8

       C.     The Claims Contain an Inventive Concept ............................................. 9

               1.     The Tokenization Scheme Alone Provides an Inventive Concept ........... 10

               2.     The Ordered Combination of the Claims is Inventive ............................. 11

               3.     The Claims are More Concrete Than the Claims in *Bascom* .................. 13

V.     Defendant Has Not Met Its Burden For the Other Claims ................................. 16

VI.   Defendant's Failure to Commit to Any Claim Construction Position Demonstrates That the Motion Should be Denied .................................................................. 19

VII.   Conclusion ...................................................................................................... 20

## I.     INTRODUCTION

Defendant Uber Technologies, Inc. alleges that the 748 Patent is directed to no more than the abstract idea of "sending a questionnaire, filling it out, and sending it back." But a fair reading of the 748 Patent shows that it instead discloses a specific and concrete method for improving the prior-art handheld computing systems for collecting information in the field. The claims require discrete, tangible machines—performing specific functions in a particular manner—in order to overcome technical  problems found in prior-art handheld computing systems. They thus do much more than claim the abstract idea of "sending a questionnaire, filling it out, and sending it back."

## II.     THE 748 PATENT

The 748 Patent "relates to a system of computing devices for the collection and management of information." Ex. 1 at 1:17-18 [748 Patent]. More specifically, it is directed to improving the use of "handheld computers" that are "loosely networked" to servers for the purpose of collecting information in the field.  *Id*. at 1:19-24; 1:33-40.

The 748 Patent describes specific, technical problems that existed in such handheld-computer systems that were available in the prior art. For example, the 748 Patent explains that "the present trend is for a business to commission the authoring of a custom program aimed at a particular need." *Id*. at 2:57-59. What that means is that when the program running on the handheld computer needs changing, developers must make the change on a development system, and then re-transfer the entire program to each target device. *Id*. at 3:7-3:10.

The 748 Patent also explains that the data networks that are typically available for gathering information on a wireless handheld computer have two problems. First, those networks

are not always available. Second, the bandwidth of most practical wireless systems is limited. *Id*. at 3:64-4:1.

The 748 Patent proposes and claims concrete, technical solutions that can be used to improve the prior-art handheld computers, and address these and other problems. For example, the 748 Patent discloses tokenizing a questionnaire so that it can be executed on a handheld computer without the need to recompile and reload a software package onto the handheld computer. *Id*. at 5:21-32. Additionally, to handle the loose nature of networks that are available to handheld devices, the 748 Patent explains that "if any communication connection is available between devices wishing to communicate, network transmissions occur normally, in real time." *Id*. at 5:7-10. On the other hand, "[i]f a network connection is unavailable at that moment, the information is temporarily stored in the device and later transmitted when the connection is restored." *Id*. at 5:10-12.

The 748 Patent discloses and claims other concrete, technical improvements to systems that were available in the prior art. For example, the 748 Patent teaches using an integral GPS device for multiple purposes, including causing location information to be automatically collected by the executing questionnaire, creating questionnaires that are customized for particular locations, and executing questionnaires when the remote computing devices reach certain locations. *Id.* at 5:33-48; 8:56-61; 10:55-65. It also discloses systems that allow questionnaires to be easily created without sophisticated programming skills. *Id.* at 5:33-38, 56-60. And it discloses the ability to transmit modifications to the questionnaires incrementally, so that the entire questionnaire does not have to be downloaded every time a change is made. *Id.* at 5:21-32.

2

## III.   A MOTION TO DISMISS IS NOT A PROPER VEHICLE FOR DEFENDANT'S SECTION 101 DEFENSE

As a threshold matter, the Court should not take up defendant's affirmative invalidity defense on a motion to dismiss. A dismissal of Fall Line's complaint under Fed. R. Civ. P. 12(b)(6) would be appropriate only if Fall Line failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendant does not argue that Fall Line failed to plead facts to support is claim to relief. Defendant argues only that Fall Line's complaint should be dismissed based on its own affirmative defense that Fall Line's patent is invalid. Because Fall Line was not required to plead any facts related to that affirmative defense, it would be improper to dismiss Fall Line's complaint on that ground. *See Mumm v. Jacob E. Decker & Sons*, 301 U.S. 168, 170–72 (1937).

The Federal Circuit has stated that it is appropriate in some circumstances to dismiss a complaint based on § 101. *See, e.g., The Cleveland Clinic Foundation v. True Health Diagnostics LLC*, No. 2016-1766, 2017 WL 2603137, *6 (Fed. Cir. June 16, 2017). But the Federal Circuit has not considered *Mumm*. This Court should follow that Supreme Court precedent.

## IV.   THE CLAIMS ARE VALID UNDER SECTION 101

### A.   Claims Are Invalid Under Section 101 Only if Directed To an Abstract Idea and if They Lack an Inventive Concept

The Patent Act defines what is eligible for patent protection:

Whoever invents or discovery any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may contain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.

The statute contains a long recognized implicit exception for laws of nature, natural phenomena, and abstract ideas, which are not patentable. *Alice Corp v. CLS. Bank Int'l*, 134 S. Ct. 2347, 2354 (2014); *Mayo Collaborative Services v. Prometheus Lab's, Inc.,* 132 S. Ct. 1289, 1293 (2012). "The concepts covered by these exceptions are 'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none.'" *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (quoting *Funk Bro's Seed Co. v. Kalo Inoculant Co*., 333 U.S. 127, 130 (1948)).

As set forth in *Mayo*, and reaffirmed in *Alice*, a two-part "framework" is used for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 132 S.Ct. at 2355. First, the Court should consider whether the patent's claims are directed to one of the patent-ineligible exceptions to § 101: laws of nature, natural phenomena, or abstract idea. *Id*. Second, if the Court finds that the claims are directed to an ineligible concept, the Court "must examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the clamed abstract idea into a patent-eligible application." *Id*. at 2357 (citing *Mayo*, 132 S. Ct. at 1294, 1298). The elements of each claim are considered both individually and "as an ordered combination." *Id*. (citing *Mayo*, 132 S. Ct. at 1298).

**B.    The Claims Are Not Directed to an Abstract Idea**

Defendant's argument that the 748 Patent is directed to an abstract idea is based primarily on mischaracterizing and over-generalizing the 748 Patent and what it claims. For example, Defendant states that "the claims of the 748 Patent are directed to an abstract concept: sending a questionnaire, filling it out, and sending it back." Motion at 14. But this caricature of what the 748 Patent actually claims is what the Federal Circuit expressly cautioned against in *Enfish, LLC*

*v. Microsoft, Corp*. 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("The 'directed to' inquiry, therefore,

cannot simply ask whether the claims involve a patent-ineligible concept.").

> 1.     **The 748 Patent Provides a Technological Solution to Problems Found in the Prior Art**

Defendant presents the 748 Patent as simply taking a manual task (collecting data on

paper), and teaching how to do it on a computer. *See* Motion at P.12, n. 4. Certainly, the first two

sentences of the "Background" section of the 748 Patent explain the problem with entering data

on paper forms. *See* 748 Patent at 1:26-32.[1] But the Background section of the 748 Patent

immediately moves on to describe the prior-art computing systems that were used to collect

information in the field. *See id.* at 1:48. Next, the Background section discusses at length many

technical problems that existed with those prior-art systems, including the following:

- handheld operating systems "mimic those of desktop and laptop systems, despite the fact that handheld devices are typically used in a different manner and have radically different resources," *see, e.g.,* 748 Patent at 1:45-48;

- compatibility issues prevent applications developed for one remote computing device from being used on a different remote computing device, *id.* at 1:49-2:2;

- compatibility issues prevent data from being shared across different devices, *id*. at 2:3-12;

- prior-art approaches to overcoming compatibility issues, including using i-code and tokens and layer to execute them, lack optimization, and require a high level of programming skill to create, *id*. at 2:13-31;

- prior-art systems typically require "custom" programs "tailored for a specific customer" at high cost, *id*. at 2:41-64;

- prior-art systems require custom development and compilation for each separate type of device, *id*. at 3:1-7;

---

[1] Two paragraphs in the middle of the specification, and associated figures, are also directed to the basic point that collecting information on handheld computers is more efficient and much less error prone that collecting information on paper and then transferring it to computer systems. *See* 748 Patent at 10:14-36.

- prior-art systems required an entire program to be recompiled and reinstalled to implement a single change in the program, *id*. at 3:7-10;

- networks available to devices in the field are not always available, *id*. at 3:64-67;

- networks available to devices in the field have limited bandwidth, *id*. at 3:67-4:1; and

- prior-art approaches to dealing with intermittent networks, including store-and- and forward and real-time transmission, are not satisfactory, *id*. at 4:3-17.

It is these technical problems with the prior-art handheld computers that the 748 Patent addresses, not the abstract concept alleged by defendant. For example, the 748 Patent teaches equipping each remoting device with a layer that can recognize device-indifferent tokens. *See, e.g.*, *id.* at 5:21-26. By tokenizing questionnaires, it is possible to execute them on any handheld device equipped with the appropriate layer, as well as allowing incremental changes to be made to the questionnaires without having to recompile and reinstall the entire program. *See, e.g.*, *id.* at 5:26-32; 8:25-38. The tokenization scheme proposed by the 748 Patent can also be used to substantially reduce bandwidth requirements of the available networks. *See id.* at 5:49-55. Various other concrete, technical solutions to the above problems are discussed by the 748 Patent. *See, e.g.*, 8:38-9:2 (describing a programming environment allowing questionnaires to be created without a high degree of programming skill); 9:58-10:9 (describing flexible transmission scheme); 10:55-58 (teaching automatic collection of GPS information).

The claims of the 748 Patent reflect these concrete, technical solutions. Specifically, claim 19 sets forth a specific order of concrete steps (that make sense only in the context of a handheld computing device collecting information in the field), including, generally, (a) establishing a communication link between a server and the handheld device, (b) receiving a questionnaire that has been tokenized (into device-independent tokens) from the server, (c) ending communications between the server and handheld device, (d) after ending

6

communications, executing at least a portion of the tokens representing the questionnaire and storing the response (including, automatically collecting GPS coordinates), I establishing a communication link between the handheld device and a recipient computer; (f) transmitting value representing the questionnaire responses; and (g) notifying a second user of the response. Claim 19 thus cannot fairly be characterized as being "directed to the abstract idea of sending a questionnaire, filling it out, and sending it back." Motion at 1.

Defendant primarily relies on *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332 (Fed. Cir. 2017) to support its claim that the 748 Patent is directed to an abstract idea. Motion at 12-14. The patent in *Intellectual Ventures I* taught a system and method for editing XML documents, which the Federal Circuit found to be directed to "the abstract idea of collecting, displaying and manipulating data of particular documents." *Intellectual Ventures I*, 850 F.3d at 1339. According to defendant, this holding from *Intellectual Ventures I* shows that the claims of the 748 Patent are merely directed to the abstract concept of sending a questionnaire, filling it out, and sending it back. Motion at 14.

Defendant's comparison to *Intellectual Ventures I* is flawed, and the 748 Patent teaches a solution to technical problems found in the prior-art handheld computing devices. For example, one problem found in the prior art was the requirement of expensive custom software for each different handheld computer. The 748 solves this problem by teaching concrete, technical solutions (for example, a tokenization scheme) that are necessarily rooted in that computer technology. Contrary to defendant's assertions, the 748 Patent teaches methods to improve the functionality of the prior-art devices. It does not simply teach methods of collecting, displaying, and manipulating data and is thus markedly different from the patent at issue in *Intellectual Ventures I.*

### 2. Federal Circuit Precedent Demonstrates That the 748 Patent is Not Abstract

A more relevant case is *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). There, the patent-at-issue addressed the problem of retaining website visitors who, when clicking a hyperlink, would be transported away from the host's website. *Id.* at 1257. To retain the visitors on the host's site, the patent in *DDR Holdings* taught a solution that used a "hybrid web page" that incorporated the "look and feel" of the host's website with the information from the linked site, without sending the visitor to the third-party website. *Id.* The Federal Circuit explained that the claims in that patent were not abstract because they were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* The patent in *DDR Holdings* identified a problem specifically arising in the realm of computer networks—losing website visitors to third-parties— and taught a solution rooted in computer technology—the use of the "hybrid webpage."

It is the same for the 748 Patent. The 748 Patent identifies problems specifically arising in the realm of computer technology (in particular, handheld computing systems for collecting information in the field), such as the need to develop custom software for each version and type of handheld computer and the issue of "loose" networks. To solve those problems, the 748 Patent teaches concrete, technical solutions that are rooted in the computer technology. These solutions include the use of device-indifferent tokens, which allows them to be executed on any handheld computer equipped with the appropriate layer, as well as allowing incremental changes to be made to the questionnaires without having to recompile and reinstall the entire program. *See, e.g.*, *id.* at 5:26-32; 8:25-38.

A recent Federal Circuit case, *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017) further shows that the 748 Patent is not directed to an abstract idea. The patent in

*Visual Memory* taught a "memory system" that used "programmable operational characteristics" to overcome the reduced performance found in the prior-art computer processors. *Id.* at 1255. As part of the step one analysis, the Court explained that it must "ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Id.* at 1258 (citing *Enfish, LLC v. Microsoft, Corp.* 822 F.3d 1327, 1335 (Fed. Cir. 2016)). To answer that question, the Court reviewed the claims and determined that they were "directed to an improved computer memory system, not to the abstract idea of categorical data storage." *Id.* at 1259. The Court found that the claims were "directed to a technological improvement: an enhanced computer memory system" and noted that "the specification discusses the advantages offered by the technological improvement." *Id.* at 1259, 1260.

Here, as discussed above, the 748 Patent also teaches a "technological improvement:" a method involving programs for handheld computers that are device-indifferent, do not require recompiling and reinstallation after each change, and are better able to accommodate the "loose" nature of data networks, among other improvements. Just as in *Visual Memory*, the advantages offered by these improvements are discussed throughout the 748 Patent's specification. *See* Section II, *Supra*. As in *Visual Memory*, the 748 Patent focuses on a "specific asserted improvement in computer capabilities," and is not simply an abstract idea for which computers are invoked merely as a tool. *Visual Memory*, 867 F.3d at 1259 (citing *Enfish,* 822 F.3d at 1336).

## C. The Claims Contain an Inventive Concept

As shown above, the 748 Patent is not directed to an abstract idea, so the Court's analysis can end after step one. But even if there were a "close call about how to characterize what the claims are directed to," the claims of the 748 Patent would still be valid under § 101 because

they provide an inventive concept. *See, e.g., Bascom Global Internet Services, Inv. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1349 (2016).

### 1.       The Tokenization Scheme Alone Provides an Inventive Concept

Defendant seeks to minimize the use tokens in the 748 Patent in an attempt to dismiss the existence of an inventive concept. Motion at 19-21. Defendant urges that tokenization is routinely done in computer software and reference the fact that in a prior case involving the 748 Patent's parent, counsel proposed a construction for "token" based in part from the Microsoft Computer Dictionary published in 2002. *Id.* at 19. Defendant also declares that "[p]laintiff did not invent logical operations, mathematical operations or branching operations. Nor did Plaintiff invent *transmission or receipt* of logical operations, mathematical operations branching operations." *Id.* at 21 (emphasis in original).

But these arguments do not address whether the methods taught by the 748 Patent, which use tokenization to overcome the specific technical problems with prior-art handheld computers, contain an "inventive concept" within the context of determining patent eligibility. Defendant argues that such concepts were present in the prior art, but that is a § 102 or § 103 argument, not a § 101 argument. As set forth in the 748 Patent's specification and claims, the application of tokenizing in the context of the methods claimed by the 748 Patent was an advance over the prior art. This use of tokens provides an inventive concept, and defendant has not put forth sufficient evidence to show otherwise. *See McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ("Defendants provided no evidence that the process previously used by the animators is the same as the process required by the claims.").

## 2.     The Ordered Combination of the Claims is Inventive

The claim limitations, when properly considered in an "ordered combination," also provide an inventive concept. In attempting to argue otherwise, defendant improperly dissects the individual claim limitations while again repeating its mistake of mischaracterizing the 748 Patent. Defendant states that the "claims recite generic computer elements," before providing a single example of what defendant alleges is not inventive: "[c]ollecting data after the first communication has ended, for example, does not provide an inventive concept because these are functionally-claimed steps and the claims do not explain *how* they are accomplished." Motion at 27 (emphasis in original).

These conclusory statements over-generalize the claim limitations and avoid addressing the actual scope of coverage. *See, e.g.*, *Mirror Worlds Technologies, LLC v. Apple, Inc.*, No. 6:13-cv-419, 2015 WL 6750306, at *9 (E.D. Tex. July 7, 2016) (Schroeder, J.) ("This argument is misplaced because it presumes that the claimed invention can be separated from a computer environment.") Instead, to properly assess the ordered combination of the claim limitations in the context of § 101, "claims must be considered as a whole. It is inappropriate to dissect the claim into old and new elements and then to ignore the presence of the old elements in the analysis." *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made. *Id.*

The Federal Circuit directly addressed this issue in *Bascom Global Internet Services, Inv. v. AT&T Mobility, LLC*, 827 F.3d 1341 (2016). There, the district court granted the defendants' motion to dismiss on the basis that the patent was invalid under § 101. *Id.* at 1346. On appeal, the Federal Circuit first agreed with the district court that the patent at issue, which was directed to

11

filtering content on the internet, was directed to an abstract idea. *Id.* at 1349. Turning to step two of the *Alice/Mayo* analysis, the Federal Circuit also agreed that the claim limitations, "taken individually," did not provide an inventive concept. *Id.* Nevertheless, the Federal Circuit reversed the district court, finding that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350. As in *Bascom*, the defendant here ignores that the 748 Patent teaches a particular arrangement of elements as a technical improvement over prior-art handheld computing systems for collecting information in the field. *See, e.g.*, *Mirror Worlds Technologies,* 2015 WL 6750306, at *9 (Schroeder, J.) ("However, only by removing the invention from the realm of computer technology can Defendants argue that organizing 'documents' or 'information' chronologically is conventional.")

For example, the 748 Patent teaches using tokens to create the questionnaire, which prevents the need to re-compile the program for every mobile operating system any time the questionnaire is modified. 748 Patent at 1:49-2:2. Further, the 748 addresses the loose nature of networks by providing different mechanisms for transmitting data, depending on whether an active communication connection can be established at the desired time. *Id.* at 5:7-12. Further still, the 748 Patent teaches using integral GPS to improve the handheld-computing device by causing location information to be automatically collected, creating questionnaires that are customized for particular locations, and executing questionnaires when the handheld-computing device reaches a certain location. *Id.* at 5:33-48; 8:56-61; 10:55-65. These technical changes improve over the prior art by, for example, allowing questionnaires to be easily created without sophisticated programming skills and to transmit modifications to the questionnaires

12

incrementally, so that the entire questionnaire does not have to be downloaded every time a change is made. *Id.* at 5:21-38, 56-60.

As in *Bascom*, the 748 Patent is "claiming a technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way)" to collect and manage information gathered on handheld devices that overcomes then-existing problems with the prior-art handheld devices. *Bascom*, 827 F.3d at 1351. The 748 Patent is not claiming a method for sending a questionnaire, filling it out, and sending it back "*per se*, but [is] instead claiming a technical way to satisfy an existing problem for" handheld computer users and coders. *Id.* at 1351. The combination of elements, which involve multiple, tangible machines, clearly provide an inventive concept.

### 3.        The Claims are More Concrete Than the Claims in *Bascom*

Defendant argues that "the claims in this case in no way measure up to those instances where courts have found an inventive concept to be disclosed" before citing to *DDR Holdings* and *Bascom*. Motion at 28. But a side-by-side comparison of the 748 Patent and the *Bascom* patent claims shows that the 748 Patent is equally, if not more, concrete and certainly "measures up:"

| Claim 19, 748 Patent | Claim 1, U.S. Patent No. 5,987,606 from *Bascom* |
|---|---|
| A method for managing data comprising the steps of:<br><br>        (a) establishing communications between a handheld computing device and an originating computer wherein said handheld computing device has a GPS integral thereto;<br><br>        (b) receiving within said handheld computing device a transmission of a tokenized questionnaire from said | A content filtering system for filtering content retrieved from an Internet computer network by individual controlled access network accounts, said filtering system comprising:<br><br>        a local client computer generating network access requests for said individual controlled access network accounts;<br><br>        at least one filtering scheme; |

| | |
|---|---|
| originating computer, said tokenized questionnaire including at least one question requesting location identifying information, said tokenized questionnaire comprising a plurality of device independent tokens; <br><br> (c) ending said communications between said handheld computing device and said originating computer; <br><br> (d) after said communications has been ended, <br><br> (d1) executing at least a portion of said plurality of tokens comprising said questionnaire on said handheld computing device to collect at least one response from a first user, and, <br><br> (d2) storing within said computing device said at least one response from the first user; <br><br> (d3) using said GPS to automatically obtain said location identifying information in response to said at least one question that requests location identifying information; <br><br> (e) establishing communications between said handheld computing device and a recipient computer; <br><br> (f) transmitting a value representative of each of said at least one response stored within said handheld computing device to said recipient computer; and, <br><br> (g) after receipt of said transmission of step (f), transmitting a notice of said received value representative of each of said at least one response to a second user. | a plurality of sets of logical filtering elements; and <br><br> a remote ISP server coupled to said client computer and said Internet computer network, said ISP server associating each said network account to at least one filtering scheme and at least one set of filtering elements, said ISP server further receiving said network access requests from said client computer and executing said associated filtering scheme utilizing said associated set of logical filtering elements. |

In finding that the claims in *Bascom* were not abstract, the Federal Circuit explained that

"the inventive concept … is the installation of a filtering tool at a specific location, remote from

14

the end-users, with customizable filtering features specific to each end user." *Bascom*, 827 F.3d at 1350. Therefore, the claims require: (1) a "filtering tool" that is "customizable;" (2) that the filtering tool is located at a specific location that is remote from the end user; and (3) that the filtering must be "customizable" with "filtering features specific to each user." *Id.*

In comparison, claim 19 requires, for example: (1) multiple "tools" in the form of specific hardware such a handheld computing device, an originating computer, and a recipient computer; (2) a questionnaire that is "tokenized," includes "at least one question containing location identifying information," and "automatically obtain[s]" the "location identifying information;" and (3) that the tokens must be "device independent." 748 Patent at 16:48-17:12 (claim 19).

These claim limitations are just as specific as those at issue in *Bascom*. Additionally, for example, claim 19 requires that the handheld computing device contains specific functionality, including an integral GPS, the ability to receive and execute a tokenized questionnaire, the ability to store responses to that questionnaire (gathered both from the user and automatically), and the ability to transmit the responses. *Id.* at 16:51-55, 16:62-67, 17:7 (claim 19). As another example of the greater specificity, claim 19 also requires a specific sequence of establishing and terminating communications between the handheld computing device and the originating and recipient computers in order to cause the transfer of the correct information (tokenized questionnaire, responses) at the correct time. *See, e.g.*, 16:48-17:9 (claim 19). Other claims in the 748 Patent include additional specific limitations, beyond what is recited in claim 19. *See, e.g.*, Section V, *infra*.

15

## V.     DEFENDANT HAS NOT MET ITS BURDEN FOR THE OTHER CLAIMS

Defendant argues that all claims in the 748 Patent are substantially similar to claim 19

and that the Court need not analyze them. Motion at 23. Defendant then provides a cursory

analysis of the other claims, before declaring each one abstract. *Id.* at 23-26. Each claim,

however, is "presumed valid independently of the validity of other claims." 35 U.S.C. § 282(a).

Moreover, the burden to prove invalidity—by clear and convincing evidence—for each claim

rests with defendant. *Id.* Defendant has failed its burden to address each claim of the 748 Patent

as part of defendant's § 101 motion.

Initially, Defendant tries to shift the burden to Fall Line by seemingly arguing that Fall

Line is "in the best position to narrow the dispute." *Id.* at 11, n. 3. (relying on *In re Katz*

*Interactive Call Processing Litigation*, 639 F.3d 1303, 1311 (Fed. Cir. 2011)). Defendant's

argument and reliance on *Katz* is misplaced. In *Katz*, the plaintiff had asserted "a total of 1,975

claims from 31 patents against 165 defendants in 50 groups of related corporate entities." *Id.* at

1309. On the defendants' motion, the district court ordered Katz "initially to select no more than

40 claims per defendant group, and after discovery to narrow the number of selected claims to 16

per defendant group." *Id.* The plaintiff refused to select claims pursuant to the district court's

order, and instead argued that the order violated its due process rights. *Id.* at 1310. This is

inapposite to the instant case, where the issue is whether defendant met its burden to prove that

all claims of the 748 Patent are ineligible by clear and convincing evidence. *See*, *Perdiemco,*

*LLC v. Industrack LLC*, Case No. 2:15-cv-727-JRG-RSP, 2016 WL5719697, at *7 (E.D. Tex.

Sept. 21, 2016) *adopted* 2016 WL 5475707 (E.D. Tex. Sept. 29, 2016) ("When the movant relies

on a representative claim in its § 101 analysis, it bears the burden of showing that the other

asserted claims are substantially similar and linked to the same abstract idea.") (internal citations omitted) (Payne, MJ).

Defendant has failed in its burden to show that there are no meaningful differences between the claims. For example, defendant appears to argue that claims 1, 16, and 21 add only a reference to "GPS coordinates" when compared to claim 19. Motion at 24. Defendant also argues that those claimed methods could be performed "without *any* use of GPS." *Id.* (emphasis in original). But this is refuted by the claim language, which explicitly requires the use of an integral GPS and/or GPS coordinates.[2]

Defendant next argues that claims 3-4 and 7-8 add a branching path or logic, but that this is merely an "abstract concept that can be performed manually by a human with a pen and paper. *Id.* at 24-25. Defendant dismisses this limitation as merely an abstract concept, but fails to explain how it, when analyzed with the other limitations in an "ordered combination," fails the *Alice* framework. As addressed above, merely urging that an individual limitation is not inventive is insufficient.

In addition to the above, independent claims 1 and 7 are further distinct from claim 19. Claim 1 requires the creation of a questionnaire "customized for a location," executing the questionnaire only when the device is "at said location," and transmitting the responses "in real time." 748 Patent at 13:49-64 (claim 1). Similarly, claim 7 requires a questionnaire that is "customized for a particular location" before being "automatically transferred" to the computer.

---

[2] *See, e.g.*, 748 Patent at 13:51 (claim 1) ("requesting GPS coordinates"); *id.* at 13:61 (claim 1) ("entering the GPS coordinates"); *id.* at 16:22 (claim 16) ("requesting GPS coordinates"); *id.* at 16:36 (claim 16) ("entering the GPS coordinates"); *id.* at 17:21-22 (claim 21) ("GPS integral thereto"); *id.* at 17:25 (claim 21) ("requesting GPS coordinates"); *id.* at 18:4 (claim 21) ("entering the GPS coordinates"); *id.* at 18:17-18 (claim 21) ("value representative of GPS coordinates"); and *id.* at 18:22 (claim 21) ("transmitted GPS coordinates").

748 Patent at 14:49-53 (claim 7). Then, the questionnaire is only executed once the device is at the particular location. *Id.* at 55-58 (claim 7). Further, claim 7 requires that the responses to the questionnaire are transmitted in real time to a central computer. *Id.* at 63-65 (claim 7). Compare all of those steps to claim 19, which does not include a questionnaire customized for a particular location, does not require the questionnaire to be executed at that particular location, and does not transmit the responses in real time, but instead stores them on the device. *Id*. at 16:48-17:12 (claim 19). These are not trivial differences, but rather represent a distinct approach.

Defendant seeks to disregard these additional limitations found in claims 1 and 7 by again isolating individual elements and labeling them as "conventional" or "generic." Motion at 25. As the Federal Circuit made clear in *Bascom*, this type of piece-meal analysis is improper when evaluating the claim elements in an ordered combination. *Bascom*, 827 F.3d at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

Claim 2 adds to claim 1 the step of translating the responses into "a format recognizable by a particular computer" before accessing those translated responses. 748 Patent at 14:1-4 (claim 2). Defendant firsts argues that this claim limitation does not have adequate support in the 748 Patent's specification. Motion at 24. But this argument goes towards enablement and § 112, and defendant does not explain how it relates to the § 101 arguments presented in its Motion. Defendant then, again, isolates the limitation concerning translation without ever addressing the ordered combination of limitations found in claims 1 and 2.

Defendant's arguments are similarly deficient with regards to the additional limitation in Claim 12, which requires the handheld computer to be authenticated. *Id.* at 25-26. Defendant

declares that "[a]authentication is not inventive," but makes no argument regarding the eligibility

of those claims when the limitations are analyzed in an "ordered combination." *Id.* at 26.

Defendant then provides only a cursory analysis of the remaining claims before declaring that all

"may add a few glosses," but are still directed to ineligible subject matter. *Id*. The conclusory

statements by defendant are insufficient to satisfy its burden to show that all claims of the 748

Patent are directed to an abstract idea. *Uniloc USA, Inc. v. E-MDS, Inc.*, No. 6:14-cv-00625-

RWS, 2015 WL 10791906 (E.D. Tex. August 8, 2015) (Schroeder, J) (denying part of

defendants' § 101 motion, explaining that "[d]efendants have not provided clear and convincing

evidence that the remaining claims fail to satisfy § 101.").

## VI.     DEFENDANT'S FAILURE TO COMMIT TO ANY CLAIM CONSTRUCTION POSITION DEMONSTRATES THAT THE MOTION SHOULD BE DENIED

As defendant acknowledges, the meaning of "token" was specifically addressed by the

examiner in the Notice of Allowance for the 748 Patent. Motion at 20. At this time, in view of

the comments made by the examiner of the 748 Patent, the proper construction of "token" is

unresolved and pertinent to the § 101 analysis. If defendant maintains its position that the 748

Patent does not contain an inventive concept because "tokens" are not inventive, the Motion

should be denied because any dispute as to its construction must be resolved in Fall Line's favor.

*Bascom*, 827 F.3d at 1352 (construing claims in favor of patent owner in resolving § 101 motion

to dismiss). Furthermore, as this Court has noted, addressing § 101 after claim construction will

often "give the Court a fuller understanding of the patent, [and] it is also more likely to lead the

Court to the correct outcome with correct analysis." *Autumn Cloud LLC v. TripAdvisor, Inc.*, No.

2:16-CV-853-JRG-RSP, 2017 WL 1856232, at *1 (E.D. Tex. Apr. 3, 2017), *adopted* No. 2:16-

CV-853-JRG-RSP, 2017 WL 1838145 (E.D. Tex. May 6, 2017) (Payne, MJ). Further "[a]t the

pleading stage, it is generally only appropriate to conclude that a patent claim is ineligible under

Section 101 when there are no bona fide disputes over claim terms or when the Court has a definite and firm conviction regarding patent ineligibility, even after all claim terms are construed in favor of the non-movant. If the Court has any reasonable doubts, then denial without prejudice is the more prudent course." *Id.* at *2.

Defendant urges that no claim construction is necessary, and that it is Fall Line's burden to provide its proposed constructions at this early stage. Motion at 29-30. This is defendant's motion, and, while it points out that the claims in the 748 Patent's parent were previously construed, defendant has not adopted those prior constructions, nor agreed to be bound by them. *Id.* at 19-20, 29-30. Defendant repeatedly emphasizes the existence of those prior constructions, even attaching the prior court's *Markman* order to its motion, but does not indicate whether it is willing to be bound by those constructions in this case. It appears that defendant hopes to preserve the ability to argue that no claim construction is necessary at this stage, but then urge a different construction at a later time. It would be unfair to allow defendant to argue for a broad construction while resolving a § 101 motion on the pleadings, but still reserve the right to later argue for a narrower construction to urge non-infringement.

## VII.    CONCLUSION

For the reasons stated above, the Court should deny defendant's motion to dismiss in its entirety.

Dated: September 22, 2017                         Respectfully submitted,

/s/ *Michael D. Ellis*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886

zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

*Attorneys for Fall Line Patents, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ *Michael D. Ellis*</u>
Michael D. Ellis