**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| FALL LINE PATENTS, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHOICE HOTELS INTERNATIONAL, INC.,<br><br>　　　　Defendant. | CIVIL ACTION NO. 6:17-CV-00407-RWS |
| FALL LINE PATENTS, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>　　　　Defendant. | CIVIL ACTION NO. 6:17-CV-00408-RWS |

**REPLY BRIEF IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 1

    A.    Plaintiff Fails to Show that the '748 Patent Is Non-Abstract.................................. 1

    B.    Plaintiff Identifies No Inventive Concept in the Claims......................................... 6

    C.    The Unasserted Claims Do Not Rescue the '748 Patent......................................... 8

    D.    Claim Construction Is Not Required...................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex. LLC v. DirecTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016)..................................................................3, 8, 9

*Apple, Inc. v. Ameranth, Inc.,*
  842 F.3d 1229 (Fed. Cir. 2016)..........................................................................3

*Bascom Global Internet Services, Inc. v. AT&T Mobility, LLC,*
  827 F.3d 1341 (Fed. Cir. 2016)..........................................................................7

*CLS Bank, Int'l v. Alice Corp.,*
  717 F.3d 1269 (Fed. Cir. 2013) (en banc)..........................................................6

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014)..........................................................................8

*Cyberfone Sys, LLC v. CNN Interactive Group, Inc.,*
  558 Fed. App'x 988 (Fed. Cir. 2014)................................................................10

*DDR Holdings, LLC v. Hotels.com, L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014)..........................................................................4

*Dealertrack v. Huber,*
  674 F.3d 1315 (Fed. Cir. 2012)..........................................................................2

*Electric Power Group, LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016)......................................................................3, 9

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016)...................................................................3, 4, 7

*Intellectual Ventures I LLC v. Capital One Financial Corp.,*
  850 F.3d 1332 (Fed. Cir. 2017)..........................................................................3

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.,*
  No. 13-cv-3777, 2015 WL 1941331 (S.D.N.Y. April 28, 2015)..........................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012)..............................................................................................6

*Mirror Worlds Technologies, LLC v. Apple, Inc.,*
  No. 6:13-cv-419, 2015 WL 6750306 (E.D. Tex. July 7, 2016)...........................7

*Mumm v. Jacob E. Decker & Sons,*
   301 U.S. 168 (1937)..............................................................................................10

*Synopsis, Inc. v. Mentor Graphics Corp.,*
   839 F.3d 1138 (Fed. Cir. 2016).........................................................................2, 3

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)..........................................6

*Uniloc USA, Inc. v. ADP, LLC,*
   No. 2:16-cv-00741, slip op. (E.D. Tex. Sept. 28, 2017)......................................3, 4

*Versata Dev. Grp., Inc. v. SAP Am., Inc.,*
   793 F.3d 1306 (Fed. Cir. 2015)............................................................................2

*Virginia Innovation Sciences Inc. v. Amazon.com, Inc.,*
   No. 1:16–cv–00861, 2017 WL 64147 (E.D. Va. Jan. 5, 2017)..............................6

*Visual Memory LLC v. NVIDIA Corp.,*
   867 F.3d 1253 (Fed. Cir. 2017)............................................................................4

*Voxathon LLC v. Alpine Electronics of America, Inc.,*
   No. 2:15-cv-562, 2016 WL 260350 (E.D. Tex. Jan. 21, 2016) ..........................6, 8

# I.     INTRODUCTION

Plaintiff's effort to save the '748 patent from Section 101 invalidity is a misdirection. Instead of establishing that the *claims* recite a non-abstract invention at *Alice* step one, Plaintiff relies primarily on unclaimed features discussed in the *specification* to argue that the claims are eligible.  But it is the patent's claims, not its specification, that control the step one inquiry and Plaintiff's extended discussion of unclaimed features is irrelevant.  Plaintiff's step two arguments are more of the same.  Plaintiff asserts that the claims "use tokenization to overcome the specific technical problems with prior-art handheld computers" and therefore provide an inventive concept.  Resp. at 10.  But this argument fails at the threshold because the patent discloses no programming or other technical details for the claimed use of "tokens," thereby confirming that their use is conventional.  Plaintiff's "ordered combination" arguments also do not withstand scrutiny because Plaintiff fails to show how the ordered combination of generic components improves computer functionality.

Here, as Uber's opening brief makes clear, the claims recite nothing more than a series of steps directed to the abstract idea of sending a questionnaire, filling it out, and sending it back. Thus, they are not meaningfully distinct from other claims directed to information collection, storage, manipulation and transmission that the Federal Circuit repeatedly has held to be ineligible.  And the claims' lack of any meaningful technical detail confirms that they are drawn to the abstract idea itself.   Uber's motion to dismiss accordingly should be granted.

# II.     ARGUMENT

## A.     Plaintiff Fails to Show that the '748 Patent Is Non-Abstract.

In an effort to rebut Uber's showing that the claims are directed to an abstract idea, Plaintiff identifies a laundry list of purported "technical problems" and solutions in the *specification*.  Resp. at 5-6.  But in making this argument, Plaintiff fails point to any aspect of the *claims* that constitutes a

"concrete, technical solution" to such problems.  *Id.*  For example, Plaintiff relies on the

specification's discussion of "technical problems" with "prior-art computing systems that were

used to collect information in the field," such as "compatibility issues" that that prevented data

sharing and application use across different devices.  Resp. at 5.  According to Plaintiff, the

lynchpin of the '748 patent's solution to these problems is a "layer" – called an operating

instruction system or "OIS" – that enables "any handheld computer equipped with the

appropriate layer" to execute "device-indifferent tokens" representing a questionnaire.  *Id.* at 8,

citing '748 patent at 5:26-32 and 8:25-38 (discussing OIS); *see also* 7:51-58.

But, the claims do not expressly recite any "OIS" or any other such "layer."  In fact, the

applicant cancelled the sole claim reciting an "OIS" during prosecution.[1]  Such unclaimed

features and benefits are irrelevant to the eligibility inquiry.  *Dealertrack v. Huber*, 674 F.3d

1315, 1334 (Fed. Cir. 2012) (rejecting patentee's reliance on "certain algorithms [] disclosed in

the specification" to overcome § 101 challenge to computer-aided method because "[i]n

considering patent eligibility under § 101, one must focus on the claims"); *Synopsis, Inc. v.*

*Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (rejecting patentee's reliance on

specification's "incorporation of software code" because claims did not recite computer);

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) ("supposed

benefits … not recited in the claims" are irrelevant to the § 101 inquiry).

Plaintiff's related argument that the order of the claimed steps, in and of itself, reflects a

concrete, technical solution also does not withstand scrutiny.  In effect, Plaintiff does nothing more

than recite the elements of the claim and then summarily posit that Claim 19 cannot be characterized

as being directed to an abstract idea.  Resp. at 6-7.  Plaintiff, however, makes no effort to identify

---

[1] *See* Ex. J (excerpts from prosecution history showing amended claim 9, reciting "remote computer running an OIS", and subsequent cancellation of that claim).

*how* the order provides any solution to any purported technical problem, let alone a "specific implementation of a solution to a problem." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016).  Plaintiff offers no meaningful distinction of *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332 (Fed. Cir. 2017), or the many other Federal Circuit decisions invalidating analogous patents involving "collecting information, analyzing it, and displaying certain results of the collection and analysis," *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016), because it cannot.

Instead, Plaintiff conclusorily asserts that the '748 patent "teaches a 'technological improvement:' a method involving programs for handheld computers that are device-indifferent, do not require recompiling and reinstallation after each change, and are better able to accommodate the 'loose' nature of data networks, among other improvements."  Resp. at 9.  But like the patent in *Affinity Labs of Tex., LLC v. DirecTV, LLC,* 838 F.3d 1253 (Fed. Cir. 2016), there is nothing in the claims "directed to *how* to implement" the function of sending a tokenized questionnaire, filling it out and sending it back.  *Id.* at 1258.  The claims are overly vague in that they recite using a tokenized questionnaire to collect data without reciting any "particular way of programming or designing the software" to facilitate execution of the program according to the claim.  *Uniloc USA, Inc. v. ADP, LLC*, No. 2:16-cv-00741, slip op. at 12 (E.D. Tex. Sept. 28, 2017) (citing *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016)).  Moreover, most, if not all, of the purported "improvements" Plaintiff identifies stem from the black box functionality of the "OIS" layer that is not claimed or described with any detail.  *See, e.g.*, '748 patent at 5:21-26, 7:47-55.  And, even if every detail from the specification were imported into the claims,[2] there is nothing concrete or technical about the specification's generic disclosure of the use of tokenization to

_____

[2] The Federal Circuit recently reaffirmed that such an approach is improper to save a claim from § 101 invalidity.  *Synopsis*, 839 F.3d at 1149.

transmit data.  *Id.* at 8:25-38.  Applying the Federal Circuit's analysis in *Enfish*, the claims are "simply directed to *any* form of [tokenization]," which is insufficient to preclude a finding that the claims are directed to an abstract idea.  *Enfish*, 822 F.3d at 1337 (emphasis in original).

Finally, Plaintiff's reliance on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) and *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017) is misplaced because the '748 patent is nothing like the patents in those cases.  The patent at issue in *DDR Holdings* "over[ode] the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink" to yield a new composite web page.  773 F.3d at 1258.  By contrast, the '748 patent does not claim any change to the standard structure of the Internet, and instead uses generic computer and network components to carry out the claimed method.  '748 patent, 4:51-64.[3]  *Visual Memory* is equally inapt.  There, the Federal Circuit found that the claims recited "an enhanced computer memory system" and thus were directed to a "specific asserted improvement in computer capabilities—the use of programmable operational characteristics that are configurable based on the type of processor."  867 F.3d at 1259-60 (internal quotation marks and citation omitted).  By contrast, here, the '748 patent does not improve computer memory or anything about how a computer operates, and discloses no code or any other technical details for implementing its black box functionality.  Both cases, accordingly, confirm that the '748 patent claims are abstract.

At best, the '748 patent claims render more efficient the process of sending a questionnaire, filling it out, and sending it back.  But such increased efficiencies do not amount to technological improvements to a computer's functionality.  *Uniloc,* No. 2:16-cv-00741, slip op. at 12.  Indeed, the patent itself recites a preexisting manual analog that it seeks to make more efficient ('748 patent at

---

[3] Whether a patent purports to solve problems in "the realm of computer technology" does not make it patent-eligible either.  The court in *DDR Holdings* "did not hold that all claims to methods solving a problem 'necessarily rooted in computer technology' constitute patent-eligible subject matter."  *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777, 2015 WL 1941331, at *10 (S.D.N.Y. April 28, 2015).

1:27-30, 10:14-27, Fig. 4), and the below chart cements that claim 19 is abstract because it could be

performed by a human:

| Claim language | Performance without a computer |
|---|---|
| 19. A method for managing data comprising the steps of: | |
| (a) establishing communications between a handheld computing device and an originating computer wherein said handheld computing device has a GPS integral thereto; | A first person communicates with a second person. |
| (b) receiving within said handheld computing device a transmission of a tokenized questionnaire from said originating computer, said tokenized questionnaire including at least one question requesting location identifying information, said tokenized questionnaire comprising a plurality of device independent tokens; | The first person receives a questionnaire from a second person that includes at least one question requesting location identifying information. |
| (c) ending said communications between said handheld computing device and said originating computer; | The first person and second person end their communication. |
| (d) after said communications has been ended, | |
| (d1)  executing at least a portion of said plurality of tokens comprising said questionnaire on said handheld computing device to collect at least one response from a first user, and, | The first person responds to the questionnaire. |
| (d2)  storing within said computing device said at least one response from the first user; | The response is written down. |
| (d3)  using said GPS to automatically obtain said location identifying information in response to said at least one question that requests location identifying information; | The first person responds to the question asking for his or her location. |
| (e) establishing communications between said handheld computing device and a recipient computer; | The first person communicates with the second person. |
| (f) transmitting a value representative of each of said at least one response stored within said handheld computing device to said recipient computer; and, | The first person provides the questionnaire responses to the second person. |
| (g) after receipt of said transmission of step (f), transmitting a notice of said received value representative of each of said at least one response to a second user. | A notice is sent to another person regarding the received responses. |

**B.      Plaintiff Identifies No Inventive Concept in the Claims.**

Because Uber made a *prima facie* showing that the claims of the '748 patent do not include

an inventive concept, Plaintiff bears the burden to show that they do.  *Voxathon LLC v. Alpine*

*Electronics of America, Inc.*, No. 2:15-cv-562, 2016 WL 260350, at *4 (E.D. Tex. Jan. 21, 2016).[4]

To meet its burden, Plaintiff asserts that the claims of the '748 patent provide an inventive step

because (1) the patent discloses a "tokenization scheme" and (2) the "ordered combination" of claim

19 is inventive.  Resp. at 8-12.  Plaintiff's argument fails on both counts.

First, Plaintiff makes no effort to identify or describe the tokenization scheme in any detail.

Indeed, Plaintiff does not even cite to the '748 patent in this section of its Response, let alone identify

where in the claims tokenization is used in a way that is anything more than a generic computer

component performing generic computer operations.  Resp. at 8-10.  Tokenization is routine in

computer software, as the Plaintiff conceded in claim construction briefing in prior litigation

regarding a related patent.  Mot. at 19-20.  Simply put, Plaintiff cannot rely on a vague reference to a

routine process previously known in the industry to transform an otherwise abstract claim into a

patent-eligible one.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79-80

(2012).[5]

---

[4] Relatedly, contrary to Plaintiff's argument, the burden required to prove ineligibility is unsettled.  *See CLS Bank, Int'l v. Alice Corp.*, 717 F.3d 1269, 1304-05 (Fed. Cir. 2013) (en banc) (Rader, J., concurring-in-part, dissenting-in-part) (finding presumption of validity applies to § 101, thus applying "clear and convincing" standard); *cf. Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720-21 (Fed. Cir. 2014) (Mayer, J., concurring) (finding no presumption of eligibility applies to § 101).  The burden of proof, however, does not matter here.  Under any evidentiary standard, the claims are ineligible.

[5] Plaintiff suggests that Uber's discussion of whether tokenization was previously known in the industry is a "§ 102 or § 103 argument, not a § 101 argument."  Resp. at 10.  Whether tokenization as disclosed in the '748 patent was an improvement over the prior art, it does not provide the requisite inventive concept because there has been no non-conventional or non-generic use of tokenization in the claims.  *See Virginia Innovation Sciences Inc. v. Amazon.com, Inc.*, No. 1:16–cv–00861, 2017 WL 64147, at *11-12 (E.D. Va. Jan. 5, 2017) ("The obviousness and novelty questions ensure that a patent holder does not unfairly piggy-back on, or overlap with, *past* invention.  That, in turn, ensures that inventors enjoy the full benefits of their existing

Second, Plaintiff points vaguely to a purported "ordered combination" of claim elements as allegedly providing an inventive concept, Resp. at 10-12, and relies primarily on *Bascom Global Internet Services, Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341 (Fed. Cir. 2016) for the proposition that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."[6] Resp. at 12.  But *Bascom* does not help Plaintiff's cause in any respect.  In *Bascom*, the patent-in-suit was directed to systems for filtering content on the Internet. *Id.* at 1345.  The claims provided for individually customizable filtering on a remote Internet service provider server.  *Id.*  As a result, the Federal Circuit found that "[b]y taking a prior art filter solution (one-size-fits-all filter at the ISP server) and making it more dynamic and efficient (providing individualized filtering at the ISP server), the claimed invention represents a software-based invention that improves the performance of the computer system itself."  *Id.* at 1351 (internal quotation marks and alterations omitted).  By attempted analogy, Plaintiff asserts that the "'748 Patent teaches a particular arrangement of elements as a technical improvement over prior art handheld computing systems for collecting information in the field."  Resp. at 12.  Yet, Plaintiff does not show *how* such arrangement improves the performance of any computing elements, as in *Bascom*.  827 F.3d at 1351.

---

patents. On the other hand, the eligibility framework focuses on whether *future* invention will be unduly preempted by effectively allowing an idea to be patented.") (emphasis in original).

[6] Plaintiff also cites to the Court's opinion in *Mirror Worlds Technologies, LLC v. Apple, Inc.*, No. 6:13-cv-419, 2015 WL 6750306 (E.D. Tex. July 7, 2016) for the proposition that the claimed invention cannot be separated from a computer environment. Resp. at 11.  However, in that case, the Court found that "[t]he problem is specific to the field of computer operating systems and the claimed solution purport[s] to improve the functioning of the computer itself." *Id.* (internal quotation marks omitted).  As Uber has established, the claims of the '748 patent do not purport to solve a problem that is specific to the field of computer operating systems.  Instead, they disclose only a method for using *any* computer to carry out a method of transmitting and receiving a questionnaire using well-known computing components (*e.g.*, GPS).  Moreover, "fundamental economic and conventional business practices" – like sending a questionnaire, filling it out and sending it back – "are often found to be abstract ideas, even if performed on a computer."  *Enfish*, 822 F.3d at 1335.

Instead of making that required showing, Plaintiff includes a chart with a side-by-side comparison of the language from claim 19 of the '748 patent and claim 1 of the patent at issue in *Bascom*, arguing that the '748 patent "is equally, if not more, concrete" than the claim in *Bascom*. Resp. at 13-14. But that comparison simply confirms that nothing in claim 19 of the '748 patent discloses anything like the customizable and remotely-installed filtering tool of the *Bascom* claim. Moreover, a side-by-side comparison of patent claims is not the test for patent eligibility. If it were, a comparison of claim 19 of the '748 patent to the more specific claim invalidated in *Affinity Labs* would add further confirmation that the '748 patent is abstract. *Affinity Labs*, 838 F.3d at 1255-56.

## C.     The Unasserted Claims Do Not Rescue the '748 Patent.

Plaintiff asserts only claim 19 in its Complaint. All other claims are substantially similar and linked to the same abstract idea, and therefore the Court's finding of invalidity can rest on claim 19. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). In any event, Uber walked through all claims of the '748 patent, identified any distinctions between claim 19 and the unasserted claims, and made its *prima facie* case that such distinction does not provide the requisite inventive concept under relevant technical and legal principles. Mot. at 23-26. The burden then "fell upon [Plaintiff] to show that there is, in fact, an inventive concept actually present." *Voxathon*, 2016 WL 260350, at *4. Once again, Plaintiff has not met that burden. Plaintiff identifies only a handful of aspects of the remaining claims as allegedly containing "distinct limitations," but none reveals an inventive concept.

First, it quibbles with the notion that claims 1, 16 and 21 do not expressly recite a GPS receiver, asserting that these claims require use of "an integral GPS and/or GPS coordinates." Resp. at 17. But Plaintiff fails to address the substance of Uber's argument that generic GPS functionality provides no inventive concept. And it fails to distinguish a single one of the litany of cases cited in the Motion that confirm this point. Mot. at 21-22, n.7.

Second, Plaintiff points to the use of branching in claims 3, 4, 7, and 8, which it asserts should be "analyzed with the other limitations in an 'ordered combination.'"  Resp. at 17.  As with Plaintiff's other references to the "ordered combination" of claim elements, Plaintiff does not point to any aspect of the combination that renders the claim non-abstract or provides an inventive concept. *Id.*

Third, Plaintiff refers to claim 1 and 7's requirements for questionnaires to be customized for a location, that the questionnaire be executed only when the device is at the location (claim 1), and transmitting the responses in "real time" (claims 1 and 7).  Resp. at 17-18.  But just as in *Electric Power Group*, the "real time" aspect of the '748 patent claims is non-inventive because it uses merely generic computer technology.  830 F.3d at 1356 ("real time" aspect to claims non-inventive because claims "do not include any requirement for performing the claimed functions of gathering, analyzing and displaying in real time by use of anything but entirely conventional, generic technology.").  The customization by location and execution at the location are likewise non-inventive, as confirmed by the cases detailed in Uber's Motion involving similar location-dependent functionality implemented with generic technology.  Mot. at 22 n. 7.

Fourth, Plaintiff refers to claim 2 and vaguely suggests that its step of translating responses into "a format recognizable by a particular computer" before accessing the responses provides an inventive concept when considered as part of an ordered combination.  But it does not say why this is so.  Rather, as Uber explained, the purely functional nature of this requirement confirms its non-inventiveness.  *Affinity Labs*, 838 F.3d at 1263 (finding application for presenting a graphical user interface to be non-inventive because "[t]here is no further specification of a particular technology for getting the defined content displayed.").

Fifth and finally, Plaintiff refers to claim 12, which requires authentication.  Resp. at 18-19. Again, Plaintiff ignores entirely Uber's analysis of that technical concept and vaguely asserts,

without citing to the claims or any legal authority, that an amorphous "ordered combination" is somehow significant.  *Id.*  These threadbare assertions, lacking any meaningful discussion of the claims or even the specification, do not satisfy its burden.

## D.    Claim Construction Is Not Required.

Plaintiff does not expressly argue that claim construction is necessary to analyze patentability under § 101.  Plaintiff offers an observation that the proper construction of "token" is (1) "unresolved" because of the statements made by the examiner in the '748 Patent's Notice of Allowance and (2) "pertinent to the section 101 analysis." Resp. at 19.  But such a vague assertion of an "unresolved" construction issue is irrelevant.  *See Cyberfone Sys, LLC v. CNN Interactive Group, Inc.*, 558 Fed. App'x 988, 991 n.1 (Fed. Cir. 2014) ("Cyberfone argues that claim construction must precede the § 101 analysis, but does not explain which terms require construction or how the analysis would change.").  In any event, no claim construction is required for the Court to find that the '748 patent is directed to unpatentable subject matter.  Uber's Motion should be granted now, before the parties expend substantial time and resources litigating a patent that is invalid on its face.[7]

Dated:  September 29, 2017                    Respectfully submitted,


                                              */s/ Christine M. Morgan*
                                              Christine M. Morgan, *admitted* (Cal. SBN 169350)
                                              **REED SMITH LLP**
                                              101 Second Street, Suite 1800
                                              San Francisco, CA  94105

---

[7] There is no merit to Fall Line's argument that the Court cannot resolve § 101 invalidity on a motion to dismiss, based on the pre-*Twombly*, pre-Federal Rules of Civil Procedure, Supreme Court decision *Mumm v. Jacob E. Decker & Sons*, 301 U.S. 168, 170-72 (1937).  Resp. at 3.  *Mumm* was an action brought under the Equity Rules prior to the creation of the Federal Rules of Civil Procedure.  It held that because assertions of invalidity based on prior art were affirmative defenses for which the defendant carried the burden of proof, the Equity Rules did not require the plaintiff to affirmatively negate the prior art publications in the bill.  *Id.*  This is hardly the same as Fall Line's theory that its failure to state a claim as a matter of law cannot be resolved at the motion to dismiss stage under Federal Rule of Civil Procedure 12(b)(6). The Federal Circuit repeatedly has adjudicated challenges under § 101 at the Rule 12(b)(6) motion to dismiss stage. Mot. at 9-10 and n.2.  *Mumm* is inapposite.

Telephone:  +1 415 543 8700
Facsimile: +1 415 391 8269
Email:  cmorgan@reedsmith.com

Michael J. Forbes
Texas Bar Number: 24074217
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: +1 713 469 3864
Facsimile: +1 713 469 3899
mforbes@reedsmith.com

***Attorneys for Defendant Uber Technologies, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 29, 2017, the foregoing document was served upon all counsel of record via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Christine M. Morgan*
Christine M. Morgan